WILLIAM MILLENKAMP, Appellee, v. C. B. WILLENBURG et al.,
Appellants.

**BROKERS:** Recovery of Fraud-Induced Commission. Evidence re-
1    viewed, and held sufficient to support a judgment against an
agent for the return of commissions paid by reason of the fraud
of said agent.

**PRINCIPAL AND AGENT:** Imputing Agent's Knowledge to Prin-
2    cipal. An agent's knowledge is not imputed to the principal, in
controversies between the principal and his said agent.

*Appeal from Plymouth District Court.*—W. D. BOIES,
Judge.

OCTOBER 25, 1918.

ACTION to recover commissions paid on sale of real es-
tate, on the ground of fraud and collusion on the part of the
defendants, as agents of the plaintiff. The answer was, in
effect, a general denial. There was a verdict for the plain-
tiff.    From a judgment thereon, the defendants have ap-
pealed.—*Affirmed.*

*Kass Bros. & Sievers,* for appellants.

*Nelson Miller,* for appellee.

EVANS, J.—The fact contention of the plaintiff is that he
employed the defendants, C. B. Willenburg and Fred
Eichorn, as his agents, to purchase for him a certain farm,
1. BROKERS: re-      and to turn into said purchase a certain
covery of            mortgage for about $30,000, held by the
fraud-induced
commission.          plaintiff.    A commission of $500 was agreed
upon, and later paid. Thereafter, the plaintiff learned that
the seller of the farm had paid a commission to one or both
of the defendants, and that the amount of this commission
had been added to the net price of the farm demanded by

the seller, and that such fact was fraudulently concealed from the plaintiff by both of the defendants.

The fact contention of the defendants is that C. B. Willenburg represented Ludwig, the seller of the farm, and the defendant Eichorn represented the plaintiff, as the proposed purchaser, and that neither of them had any interest in the commission of the other. Both sides take the ground that Eichorn was an agent of the plaintiff. The defendants deny that Willenburg was such. The grounds laid by appellants for a reversal all rest upon the general proposition that there was no evidence of conspiracy, and that there was no evidence of the employment of Willenburg by the plaintiff as an agent. Indeed, the basic proposition upon which all the grounds of reversal rest, is that Willenburg was never employed as agent of the plaintiff, and never assumed to act as such; but that he acted openly, and with knowledge of the plaintiff, as agent for the seller. If this is the undisputed state of the evidence, then, clearly, the verdict should not stand.

I. The plaintiff testified directly that he did employ C. B. Willenburg to assist in disposing of his $30,000 mortgage, and, to that end, in the purchase of the Ludwig farm. This was denied by Willenburg and by Eichorn. While the terms of the employment, as related by the plaintiff, are somewhat indefinite, they were quite sufficient to create the relation of principal and agent. The circumstances attending the transaction strongly corroborate the claim of the plaintiff in that regard. Willenburg had acted as agent for the plaintiff in the sale of his farm at a prior time. It was pursuant to such sale that the plaintiff got the $30,000 mortgage. The plaintiff lived at Remsen. Willenburg lived at New Hampton, but had previously resided at Remsen. His brother, Henry Willenburg, was the partner of Eichorn in the real estate business, under the name of Willenburg & Eichorn. Another brother, Louis, was a

brother-in-law of Eichorn's, and was his partner in the livery business. The plaintiff had himself first conceived the idea of buying the farm of Ludwig and turning in the mortgage on the purchase. Ludwig was his nephew by marriage. He first consulted Eichorn, without any definite employment. A few days later, C. B. Willenburg appeared in the town, and, upon the call of Eichorn, the plaintiff came into a conference with Willenburg, and disclosed to him his wishes. Willenburg asked the plaintiff what commission he would pay, to which the plaintiff replied that he would pay $500. Willenburg appeared to take the leadership in bringing about the disposal of the mortgage. His conference with the plaintiff took the confidential form. When the transaction was closed, Willenburg drew a note for $500, and presented it to the plaintiff for his signature. The signed note was by him handed to Eichorn. The fact appears to be that, at the time of the first conference between plaintiff and Willenburg, Willenburg had just come from the home of Ludwig, where he had obtained a contract for the sale of the farm. This contract provided that Ludwig would accept on the purchase price the Millenkamp mortgage. His actions in that regard had been induced by information communicated to him by Eichorn. According to the plaintiff's testimony, the fact that Willenburg had such an agency was not only concealed from him, but both Eichorn and Willenburg informed him that Ludwig was refusing to list his land. Some stress is laid, in appellants' argument, upon a certain admission in the testimony of the plaintiff whereby he testified that, when he signed the $500 note and delivered it to Willenburg, Willenburg handed it to Eichorn, and said to the plaintiff, in substance: "I have no interest in this. I am doing it to help the boys." The argument is that the plaintiff, by his own admission, knew that the defendant Willenburg was not representing him as agent. Such is not the effect of the plaintiff's testimony.

Even though it were true that Willenburg was giving all the commission to Eichorn, or to Willenburg & Eichorn, this would not contradict his acts of agency already done. Furthermore, the circumstance thus brought forth has considerable significance. Why should Willenburg inform the plaintiff that he had no interest in the commission, unless he regarded the plaintiff as believing otherwise? The information thus given at this stage was valuable only to Willenburg himself, as a defense against a possible complaint. It was worth nothing to the plaintiff. The wrong, if any, perpetrated upon him, was already done. The information, coming later, might have quickened his inquiry; but suspicion was allayed by the color of generosity towards his co-agents assumed by Willenburg. We think it clear that the evidence was sufficient to go to the jury on the proposition that the defendant Willenburg did assume to act as the agent of the plaintiff. This being so, the finding of collusion between Willenburg and Eichorn was unavoidable. Eichorn knew the deception that was being practised upon his principal, and concealed it. He and Willenburg acted together in perfect harmony, and, with a manifest understanding of each other. He knew that the price represented to the plaintiff was $5 per acre higher than the net price made by Ludwig.

It is argued, with apparent sincerity, that the plaintiff, as principal, was charged with a knowledge of all that Eichorn, his agent, knew; and that, therefore, he was charged with the knowledge of the deception of which he complains. It is enough to say that the rule which constructively charges the principal with the knowledge of his agent does not operate in favor of the agent, nor in favor of those who join the agent in perpetrating a wrong upon the principal. The conclusion we thus reach as to the

2. PRINCIPAL AND AGENT: imputing agent's knowledge to principal.

state of the record is decisive of each point relied on for reversal.   The judgment below is, therefore,—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.