IOWA LOAN & TRUST COMPANY, Appellee, v. WILL SEAMAN et al., Appellants; FIRST NATIONAL BANK OF PERRY, Intervener, Appellee.

PRINCIPAL AND AGENT: Authority of Agent—Apparent Authority
1  to Collect Collateral. Makers of promissory notes who make payment to the original payee without then demanding the surrender of the paid notes and without then knowing that the original payee had hypothecated said notes and others as collateral security, may not assert *apparent* agency in said original payee to receive payment *on behalf of the collateral holder*, on the mere showing that the collateral holder, upon actual receipt from said original payee of the amount of a matured collateral note, credited said payee on his debt and returned the note to him.

EVIDENCE: Admissions—Admissions of Attorney—Effect. The admission of an attorney, made during a trial, as to the agency of a party for his client, is not necessarily binding on the client in other and subsequent litigation of a similar nature.

BILLS AND NOTES: Payment—Payment by Bank. Making a promissory note payable at a named bank is equivalent to an order to the bank to pay the note, but such statutory rule has no application when the bank does not see fit to make such payment.

Headnote 1: 2 C. J. p. 954. Headnote 2: 22 C. J. p. 395. Headnote 3: 8 C. J. p. 567 (Anno.)

Headnote 1: 21 R. C. L. 854, 867. Headnote 2: 2 R. C. L. 990.

*Appeal from Boone District Court.*—Sherwood A. Clock, Judge.

November 23, 1926.

Supplemental Opinion March 11, 1927.

The plaintiff, the Iowa Loan & Trust Company, a banking corporation located at Des Moines, commenced this action in equity upon two promissory notes executed by the defendants to the Farmers Trust & Savings Bank of Bouton, praying equitable relief. Subsequently, the First National Bank of Perry filed a petition in intervention, asking judgment against the defendants on two similar notes. No objection was raised to the petition of intervention, and the cause was tried in equity upon issues joined by all of the parties. Decree in favor of plaintiff and intervener, as prayed, and the defendants appeal.—*Modified and affirmed.*

*George Dugan* and *T. J. Mahoney*, for appellants.

*R. & F. G. Ryan* and *Baker & Doran*, for plaintiff, appellee.

*S. Trevarthen*, for intervener, appellee.

Stevens, J.—On March 1, 1921, appellants executed fifteen $1,000 notes to, and payable at, the Farmers Trust & Savings Bank of Bouton, securing the payment thereof by a second mort-

1. Principal and Agent: authority of agent: apparent authority to collect collateral. gage, naming Gardiner and Arthurs, cashier and president, respectively, of the bank, as mortgagees upon a tract of 120 acres situated in Boone County. The consideration for the notes was a part of the purchase price of the mortgaged premises which were conveyed to appellants by Gardiner subject to a prior mortgage thereon of $12,000 due July 1, 1922. Just prior to the maturity of the first mortgage, appellants, through the Bouton bank, obtained a new loan for $12,000. At the same time, the father of the appellant procured a loan through the Bouton bank of $10,800 on land owned by him, the proceeds of which were also to be applied on the indebtedness of appellants to the bank and to the payment of the first mortgage. All of the proceeds of the two loans were received from the lender by the Bouton bank. The amount was not quite sufficient to pay the mortgage indebtedness, and the deficit was made up of cash, or by other satisfactory arrangement with the bank. The second mortgage for $15,000 was released of record by Arthurs, and all but five of the series of fifteen notes returned to appellants. During all of the time involved in these transactions, the Bouton bank kept an account as a correspondent bank with the Iowa Loan & Trust Company, hereinafter referred to as the appellee, and also a similar account with the First National Bank of Perry, hereinafter referred to as the intervener.

Prior to the execution of the fifteen $1,000 notes by appellants to the Farmers Trust & Savings Bank of Bouton, the bank became indebted to appellee and also to intervener for money borrowed. To secure this indebtedness, the Bouton bank turned over certain of its bills receivable to the appellee and intervener, respectively. Among the bills receivable turned over to appellee were the two $1,000 notes maturing March 1, 1923. Of the bills receivable turned over to intervener were one each of the series maturing March 1, 1924, and March 1, 1925, respectively. The notes held by the intervener were rediscounted, after being held for a time as collateral. These notes are the subject-matter of this litigation. The exact dates when the notes were received by the respective parties are not shown, but it is not claimed by appellants that it was after their maturity.

Three propositions are urged by appellants: (a) That the Farmers Trust & Savings Bank of Bouton was the agent of ap-

pellee and intervener to receive payment of the respective notes held by them; (b) that the receipt by the bank of the proceeds of the loans referred to above, coupled with the agreement and understanding on the part of its officers that it would apply the same to the payment of the remaining notes of the series, operated as payment thereof, and to discharge appellants from liability thereon; and (c) that the judgments entered are excessive.

Several of the $1,000 notes were surrendered by the Bouton bank to appellants at the time of, or shortly subsequent to, the receipt of the proceeds of the two loans. Repeated demands were made to the officers of the bank for the surrender of the remaining notes. Excuses were made by the officers for their failure to do so, but they were doubtless unable to secure the return of the notes from the then holders thereof for cancellation and surrender to the makers.

When the proceeds of the loans were received by the Bouton bank, a special account was opened in the name of Will Seaman, and, as payments were made of the $1,000 notes, this account was charged therewith. The items of the special account were not entered upon appellant's pass book, nor did he know thereof until after the bank went into the hands of a receiver.

The evidence relied upon to establish the alleged agency of the Bouton bank to receive payments of the notes for appellee and intervener, in our opinion, is not sufficient for that purpose. It is conceded that the provision in the notes making them payable at the Bouton bank did not make it the agent of the holders of the notes to receive payment. The evidence is without dispute that the Bouton bank was the agent of appellants and the elder Seaman to procure the loans for $12,000 and $10,800, respectively, and to apply the same to the payment of the remaining notes of the series. The record contains no direct proof of the alleged agency, nor is such testimony necessary to the proof thereof. Such agency may be shown by circumstances and by the course of the parties dealing with each other. The burden of proof, however, is upon the one making payment to a claimed agent, who is not in possession of the notes, to prove actual or apparent authority of the agent to receive payment. *Bank of Montreal v. Ingerson,* 105 Iowa 349; *Huismann v. Althoff,* 202 Iowa 70.

The Bouton bank furnished appellee collateral to an amount from 15 to 40 per cent in excess of its indebtedness. As the bills receivable of the Bouton bank held by appellee matured, payment was made by the maker to the Bouton bank, and the amount remitted thereby to appellee. Upon receipt of the face of the notes by appellee from the Bouton bank, the notes were returned to it, and, in turn, surrendered to the maker. There was more or less shifting of the collateral to meet the exigencies or convenience of the borrowing bank. The Bouton bank also secured renewals of its notes held by appellee as collateral, and substituted such renewals for the original notes. Neither appellee nor intervener gave appellants' notice that their notes were held by them as collateral until after the receiver was appointed for the Bouton bank. The special account opened by the bank in the name of Will Seaman showed a credit balance in excess of $3,000 when the receiver was appointed. The testimony showed that it is the custom of a bank depositing notes with its correspondent as collateral to collect and retain the interest on such notes; hence, neither appellee nor intervener claims that they are entitled to recover for interest paid on the notes in controversy to the Bouton bank. This custom or method of dealing is urged by appellants as a circumstance bearing upon and tending to prove the alleged agency. The testimony, however, on the part of appellee, which is not controverted, is that the Bouton bank had no authority to collect and retain any part of the principal of the notes. The method of dealing in respect to the principal of the notes was, as stated, for the Bouton bank to remit payments to appellee, upon receipt of which the collateral was surrendered and returned to the Bouton bank. The witness called by appellee testified that the Bouton bank did not have authority to either collect or retain payments on notes held as collateral, and that credits were not made thereon or the collateral surrendered until actual payment was made to it. Interest payments made to the Bouton bank did not belong to the holder of the collateral, but to the payee bank. In receiving payment of interest, the bank, therefore, did not act as the agent of the holder of the collateral. The method of dealing between the intervener and the Bouton bank was, to all intents and purposes, the same as between the latter and appellee, but the transactions were fewer.

One additional fact is relied upon by appellants to establish

the alleged relationship of principal and agent between the Bouton bank and the intervener. During the trial of a case in the district court of Dallas County, involving other notes of the Bouton bank's, the attorney for intervener made the following statement:

2. EVIDENCE: admissions: admissions of attorney: effect.

"The Farmers Trust & Savings Bank of Bouton, Iowa, has complete authority from the plaintiff bank to accept renewal of notes that it had rediscounted with the First National Bank, or that was pledged to it as collateral security, and to accept payment of interest on same, and to accept payment from the makers of said notes on the principal."

The above statement of counsel was evidently made with particular reference to the case then on trial. The same attorney appears for intervener upon this appeal. It is not shown, however, that the admission of the attorney was made with the knowledge or authority of the intervener, and it must, of course, be interpreted in the light of the facts surrounding the making thereof. The attorney, as a witness, said that he was mistaken; and we are of the opinion that the effect of the remarks must be limited to the case on trial. The president of the intervener bank testified that the Bouton bank did not have authority to collect the principal of notes for it, and that it was the custom of that bank to notify the makers direct when the notes came due. The witness also denied that he heard the remark of counsel. So far as the record shows, the present litigation was not then pending, and, for aught that appears, the attorney had not then been employed by intervener to represent it in the present controversy. *Bank of Montreal v. Ingerson*, supra.

The evidence is wholly insufficient to sustain the alleged agency. The apparent authority of the Bouton bank to act as the agent of appellee and of the intervener in the collection of the notes has not been established. Apparent authority is such as the principal knowingly permits the agent to assume, or which such principal holds him out to third parties as possessing. It is the acts of the principal, and not of the agent, that determine the question of apparent authority. *American Tr. & Sav. Bank v. DeJaeger*, 191 Iowa 758; *Anderson v. Patten*, 157 Iowa 23.

It is not claimed by counsel that the custom of dealing by which the debtor bank receives and retains the interest on collateral held by its creditor affects it as a holder in due course.

Our discussion is strictly limited to the questions argued by counsel. Since it has not been proved that the Bouton bank was the agent of either appellee or intervener to receive payment of
**3. Bills and Notes: payment: payment by bank.** the notes in controversy, the judgments entered must be sustained, except as hereinafter indicated. Other questions argued, one of which is that, as the notes were payable at the Bouton bank, this was equivalent to an order to the bank to pay the same for the account of the principal debtor thereon, are without substantial merit. Section 9548 of the Code of 1924, on which the above contention is based, is without application to the facts of this case. The note was held by an innocent purchaser for value, who was not required to present the same for payment at the place where made payable. Section 9542, Code of 1924.

It is conceded by both appellee and intervener that the Bouton bank had the right to retain all interest paid to it upon notes held as collateral. This fact appears to have been overlooked by the court when the decree was signed. $278.68 interest was paid by appellants to the Bouton bank on the two notes held by appellee. This sum should be credited upon the judgment, as of the date of the entry thereof. It is also conceded by the intervener that judgment in its favor should have been for $2,230.26, instead of $2,682.68. The respective judgments should be so modified as to correspond with these concessions.

Some claim is made by appellants that it was the duty of the holder of the notes to present the same for payment at the Bouton bank, where they were made payable. This contention overlooks the provision of the notes specifically waiving presentment, as well as Section 9530 of the Code of 1924. Other matters discussed are without substantial merit.

The judgment in favor of appellee and the intervener should be modified as above indicated, and the cause is remanded to the district court for that purpose. The costs in this court will be taxed one half to appellants and one fourth to each of the appellees.—*Modified and affirmed.*

De Graff, C. J., and Faville and Vermilion, JJ., concur.

#### Supplemental Opinion.

Per Curiam.—It appears from the petition for rehearing filed in this case that the judgment entered in the district court

in favor of appellee for $2,735.14 is erroneous, and should have been for $2,000. As further appears in the opinion, under the arrangement between appellee and the Bouton bank, the former was not to receive the interest upon the note. The judgment will draw interest according to the terms of the instrument. With this modification in the amount of the judgment, the petition for rehearing is overruled.