FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellee, v. F. H. DIERCKS et al., Appellants.

No. 43449.

JUNE 19, 1936.

REHEARING DENIED DECEMBER 17, 1936.

536

E. M. Duroe, for appellants.

Whitney, Whitney & Stern, for appellee.

HAMILTON, J.—The following facts are undisputed: One Stuhlmiller purchased the real estate covered by the mortgage in question some years prior to the execution of this mortgage from one, Jennie Halkney, under a contract of purchase. Thereafter Stuhlmiller became heavily indebted to the First National Bank of Sioux Rapids, Iowa, and the bank took an assignment from Stuhlmiller of all his interest in this real estate contract. There was still due and owing to Jennie Halkney on this contract the sum of $7,000, which was a lien against this property, and any interest the First National Bank of Sioux Rapids had by virtue of this assignment was subject to the $7,000 claim held by Jennie Halkney. The defendant F. H. Diercks was cashier of said bank, and E. M. Duroe, an attorney representing said defendant in this case, was at that time vice president of said bank. One John Merrill, a local resident of Storm Lake, Iowa, was at the time fieldman for the First Trust Joint Stock Land Bank of Chicago.

The negotiations leading to the final execution of the note and mortgage in question began as follows: Mr. Merrill called at the bank soliciting loans. Diercks informed him that the bank owned this farm known as the Stuhlmiller farm on which the $7,000 debt was due, and told Merrill that "if they wanted that loan they could have it." The farm was inspected and appraised and Merrill informed Diercks that the plaintiff could not make a loan to a corporation, but if the title to the land were taken by either Mr. Duroe or Diercks, the company could make the loan. There is no dispute that the plaintiff was organized under an act of Congress which prohibited the loaning of money to a corporation, unless the individual stockholders of the corporation

were directly engaged in farming and stock raising. The application for the loan in question was therefore made by the defendant F. H. Diercks for $7000. The alleged purpose for which he was borrowing the money, as stated in the application, was to pay off this existing indebtedness due Jennie Halkney. He represented himself as the owner of the real estate, gave a list of all his personal assets and liabilities, duly answered the 150 questions required of him by the printed application. There was not a single statement in any of the answers indicating that Diercks was not the absolute owner in fee simple of the real estate offered as security for the loan. The wife's name appears in the caption of the application as one of the applicants for the loan, but her name is not signed to the application.

On February 18, 1926, a letter was written by the plaintiff, addressed to F. H. Diercks, president of the First National Bank of Sioux Rapids, Iowa, which states: ''We have our appraiser's report on the above security. We have approved this loan for the desired amount, and ask that you send us the abstract so that we can prepare the necessary papers.'' Diercks as cashier on March 1, 1926, addressed a letter to the plaintiff, inclosing abstract of title ''in connection with the F. H. Diercks loan,'' in which letter he states: ''The deed from Jennie Halkney is ready to be delivered just as soon as the money is received from this loan.'' On March 9, 1926, the plaintiff wrote a letter addressed to the First National Bank of Sioux Rapids, Iowa, in re: ''VX 4826-F. H. Diercks and Lottie Diercks, his wife, $7000.00,'' in which letter the plaintiff states: ''In conformity with your previous request, we have prepared and enclose herewith mortgage papers in the above loan, to be completed as follows:'' Here follows a list of printed requirements among which are the following:

'' (A) Mortgage, to be signed by all parties exactly as their names appear therein. * * *

'' (B) First Mortgage Note for $7000.00 to correspond with terms of mortgage and to be executed by each party signing the mortgage. *Both husband and wife must execute mortgage and note,* without regard as to which spouse holds title. *Be sure that the note and mortgage are signed by the same parties and names written as they appear in the mortgage. * * * May we ask that you make no changes* or alterations in any of the papers.

We suggest that you carefully examine them before they are executed and, should you discover any discrepancies, kindly forward such papers to us, with your comments, and we will promptly return them to you in proper form. * * *

"(D) * * * Before we can disburse funds in any loan, we require the *executed note* and abstract extended to show the record of our mortgage." (Italics supplied.)

With these instructions direct from the plaintiff, which could not be misunderstood, Diercks executed the mortgage and note, had his wife sign and execute the same, and they were returned to the plaintiff, and the plaintiff furnished the $7,000 to Mr. Diercks. After the loan was consummated Diercks deeded the farm to the First National Bank of Sioux Rapids, which bank, at the time this case was tried below, was in process of liquidation through receivership. Defendants now seek to avoid payment for the reasons heretofore stated.

The evidence shows that Mrs. Diercks executed the papers at the request of her husband for the avowed purpose of releasing any apparent dower interest which she might have as his wife, and that the husband explained to her that it was a bank transaction, and that it was necessary for the title to the real estate to be taken in his name, as the loan could not be made to the bank, and after the loan was made the land would be deeded back to the bank, and that there would be no personal liability as against the Diercks. The record is silent as to whether or not Diercks told his wife that the plaintiff would require her signature to the note and mortgage before they would make the loan. Diercks very reluctantly admitted in his testimony that he knew the plaintiff required the signature of the wife and husband before they would accept the loan.

■■■ Knowledge of the fact that Diercks did not own the real estate offered as security was conveyed to the agent, Merrill. But there is no evidence that Merrill or any one else ever conveyed this knowledge to the plaintiff. There is not a syllable of evidence that the plaintiff corporation had any actual knowledge at variance with that contained in the application for the loan, and the correspondence between the bank and the defendant Diercks and that shown by the abstract of title, and we do not understand that any claim is made that the plaintiff corporation had any personal knowledge, but the defendant strenuously con-

tends that since the fieldman, Merrill, had knowledge of the whole transaction, this knowledge was imputed to the plaintiff, and in this manner, knowledge of the entire truth of the situation was brought home to the plaintiff. Merrill was not a general agent. His duties consisted of collecting interest on loans already made, making appraisals of land, looking after insurance and soliciting loans. The evidence shows that he had no authority to make any agreements with prospective borrowers generally, but that all such matters were required to be submitted to the home office for a final approval, just as was done in the closing of the loan in this case. He was therefore an agent with limited authority.

It is a well-established principle of the law of agency that whatever an agent says or does within the scope of his express or implied authority binds his principal and is deemed the act of his principal. Ellison v. Stockton, 185 Iowa 979, 170 N. W. 435. It is likewise well established that an agent, clothed with special or limited authority, can only bind his principal within the limits of the authority granted. Ney v. Eastern Iowa Telephone Co., 162 Iowa 525, 144 N. W. 383. And persons dealing with an agent with special limited authority have the burden of showing that the agent acted within the scope of his apparent or actual authority. Brenard Mfg. Co. v. J. D. Sketchley Store, 185 Iowa 694, 171 N. W. 18. "Apparent authority" is such as a principal knowingly permits an agent to assume or holds him out as possessing. American Trust & Savings Bank of Waterloo v. De Jaeger, 191 Iowa 758, 183 N. W. 369; Iowa Loan & Trust Company v. Seaman, 203 Iowa 310, 210 N. W. 937, 212 N. W. 487; Engelke v. Drager, 213 Iowa 598, 239 N. W. 569.

We are here concerned with the matter of the scope of the agent's authority in order to ascertain whether the knowledge he acquired in reference to the condition of the title to the real estate, and which defendants contend was imputed to the plaintiff, was acquired while engaged in a transaction within the scope of his actual, implied, or apparent authority. That he acquired this knowledge in the very transaction in which he was engaged, namely, the soliciting of a loan, is quite true. It was the agent who apprised the defendants of the legal obstruction in the way of making the loan to the bank, but it should be observed that the agent made no statement relative to the question of the personal liability of Diercks. He did say that if the title were

taken in the name of an individual, the loan could be made. It is as to this particular question that the record is entirely silent, as to his authority, either expressed or implied, to bind the company by such statement. There is no evidence of any other like or similar transaction. There is no evidence that the principal had any knowledge that the statement had been made by the agent. Appellants had both actual and constructive notice that the loan was one prohibited by law. They were therefore forewarned that they were dealing in reference to a matter which was out of the ordinary and could not be handled in the ordinary and usual way.

"Acts which are not in the ordinary course of the business which the agent is employed to transact, especially those which are so unusual, remarkable, or adverse to the interests of the principal as to arouse the inquiry of a man of average business prudence, do not come within the scope of the implied powers. Nor can the authority to do an illegal act or an act that is contrary to sound public policy be implied from the authority given to do a lawful act." 2 American Jurisprudence, p. 71.

Thus it has been held that authority to loan money does not include by implication the authority to loan it at an illegal rate. Call v. Palmer, 116 U. S. 98, 6 S. Ct. 301, 29 L. Ed. 559. Neither did the authority to take applications for loans include by implication the authority to take a loan prohibited by the statute. And while the loan was not taken in the name of the bank, on defendants' theory it was in fact money borrowed for the bank, and they could not do indirectly what the law prohibited them from doing directly.

 The mortgage contract itself recited: "This mortgage is made to said party of the second part as a Joint Stock Land Bank, doing business under the 'Federal Farm Loan Act.'" Joint Stock Land Banks such as the plaintiff exist by virtue of an act of Congress, and, with a few exceptions noted in the act, are governed by the same laws so far as applicable which govern federal land banks (section 16 [U. S. C. A. title 12, section 813]). Persons dealing with or making contracts with such a corporation do so with constructive knowledge of the provisions of the federal law relative to the matter involved. Appellants were bound to know, and therefore knew of the prohibitions of this statute. With this knowledge they became parties to the

arrangement by which they now contend the First National Bank of Sioux Rapids obtained this loan by illegal and fraudulent methods, participated in by them. It required their participation in the fraudulent act to obtain the money. Under such circumstances it requires no citation of authority to substantiate the legal proposition that equity will not permit the defendants, parties to the fraud, to set up their own wrong to avoid the obligation. Federal Land Bank of Baltimore v. King, 294 Pa. 86, 143 A. 500.

There is no claim of ratification of an unauthorized act. The only claim is that knowledge of the facts which were known to Merrill was imputed to the plaintiff, his principal. Ratification cannot be based upon imputed knowledge of an unauthorized act of the agent. Furthermore, the agent, under appellants' theory of the case, was in collusion with the appellants in this scheme or plan of obtaining the money for the bank, and the plaintiff cannot be charged with notice because of the knowledge of its agent, Merrill, while acting in collusion with the appellants in a scheme to defraud his employer. Modern Steel Structural Company v. Van Buren County, 126 Iowa 606, 102 N. W. 536; Hummel v. Bank of Monroe, 75 Iowa 689, 37 N. W. 954; Van Buren County v. American Surety Company, 137 Iowa 490, at page 509, 115 N. W. 24, 126 Am. St. Rep. 290; Millenkamp v. Willenburg, 184 Iowa 809, at page 812, 169 N. W. 112.

 Under the foregoing facts, as disclosed by the record, we can see no escape from the conclusion that the trial court was correct in holding both the husband and wife personally liable on the indebtedness evidenced by the note and mortgage, executed by them. True, there was no consideration passing directly to the wife, but the consideration to support the contract entered into between the plaintiff and these defendants was the furnishing of the $7,000 to the husband, and a condition precedent to the loaning of the money was the express requirement that both the husband and wife join in the execution of both the note and mortgage. Much of the evidence violated the parol evidence rule, and was received over proper objections, but considering the facts as claimed by the defendants in their most favorable light, there is nothing to overcome the absolute requirement that both join in the execution of these papers. Under such circumstances, even though the husband was mistaken as to the law and told the wife there was no personal liability, he

knew, according to his own sworn statement, that the plaintiff would not furnish the money unless the husband and wife joined in the execution of both the note and mortgage, and where the signature of the wife is made a condition precedent to the furnishing of the money and this is communicated to the husband and the husband obtains the signature of the wife, there is sufficient consideration to support the wife's signature, and the case falls within the rule laid down in the recent case of Andrew v. Ingvolstad, 218 Iowa 8, 14, 254 N. W. 334, 337, wherein the court said:

"A careful study of the record discloses beyond peradventure of doubt that the appellee's signature to the note was amply supported by a legal consideration. She signed the note at the request of her husband in order that he might obtain the loan in question. Without the appellee's signature, the loan would not have been made."

See, also, First National Bank v. Mether, 217 Iowa 695, 251 N. W. 505; Northern Trust Company v. Anderson, 222 Iowa 590, 262 N. W. 529, 271 N. W. 192; First National Bank v. Phillips, 203 Iowa 372, 212 N. W. 678; Des Moines Joint Stock Land Bank v. Allen, 220 Iowa 448, 261 N. W. 912; Commercial Savings Bank v. Carey, 207 Iowa 1060, 224 N. W. 62. There is no claim of fraud or mistake or that any trick or artifice or fraud on the part of the husband was used in securing the wife's signature. It is true that he told her there was no personal liability. This was a mere mistake as to the law. She said that he explained to her in substance that while this was a bank obligation, the plaintiff was not permitted to loan the money to the bank, and that it was necessary that the loan be made to an individual, and the land was being deeded to them and they in turn would reassign or deed the land back to the bank. Furthermore, the evidence shows she did not rely wholly upon the husband's statement, but read over the note and mortgage before she signed it.

The note reads: "We promise to pay," etc., and the mortgage recites: "And the said parties of the first part do hereby covenant and agree to pay, or cause to be paid, the principal sum and interest above specified," etc. The application for the loan contains this statement: "If there is any variance between the note and mortgage and this application, then this applica-

tion shall be considered to be amended to conform to the note and mortgage as actually executed.''

Appellants contend that the case falls within the rule announced in Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345, and Gorman v. Sampica, 202 Iowa 802, 211 N. W. 429, and similar cases, wherein there had been a prior executory written contract entered into by the husband to which the wife was not a party, and in these cases we held that the signature of the husband to the note in question operated as a full performance of the executory contract previously existing. These cases represent an exception to the general rule, and this court has gone farther in this regard than most jurisdictions, and unless the rule itself is to be totally disregarded, we should be careful to confine the exception within well-defined lines. The basis for appellant's contention is the application which was signed by the husband alone and the approval of the loan by the company. Counsel for appellants contend that this brings the case within the rule announced in the last-cited cases. An application for loan, followed by an approval of the loan, with a request for the abstract, to the end that the real contract evidencing the loan may be consummated, falls far short of an executory contract, enforcible against the loan company on the part of the husband. The negotiations were kept open and continued and the consideration dates from the consummation of the contract evidenced by the note and mortgage and the payment of the money. The application for the loan is for the purpose of disclosing to the loan company all the conditions inquired into for the purpose of enabling the company to pass upon the advisability of accepting the borrowers and security offered, and the matters inquired into not only pertain to the value of the security, but to numerous personal matters touching the status of the borrowers themselves, and in this case, having perused the same, they approved the borrowers and security and agreed to furnish the money upon the execution of the documents to evidence the loan in the way and manner required by the plaintiff. The only contract was the one consummated by the delivery of the note and mortgage, and the case falls within the rule announced in Starry v. Starry & Lynch, 212 Iowa 274, 234 N. W. 281, and Northern Trust Company v. Anderson, supra.

Burdensome and oppressive as it may seem to hold the appellants personally for an obligation of this character, a court

of equity cannot lend its aid to extricate the parties from the unfortunate dilemma in which they have voluntarily placed themselves with full knowledge of the facts, at the time they executed and delivered the note and mortgage in question. Mr. Diercks explained this matter to his wife before she signed the papers. She read over the note and mortgage.

Under the facts disclosed by this record, there can be no doubt that Diercks held title to this real estate as trustee for the First National Bank of Sioux Rapids for the very purpose of making this loan in the way and manner in which it was made. His trust capacity was nowhere revealed to the plaintiff corporation. Having obtained the money by fraudulent means, representing himself to be the owner of the property and the real party in interest in borrowing the money, he cannot now be heard to repudiate the entire transaction and say that he is not responsible under the plain and unambiguous terms and provisions of the note and mortgage. The question of what his rights are as between himself and the bank for which he was acting as trustee in this matter is not involved.

The judgment and decree of the trial court was correct, and the same should be, and is hereby, affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, PARSONS, STIGER, and RICHARDS, JJ., concur.