Sidney M. Bird appeals from a summary judgment in favor of Auto Owners Insurance Company ("Auto-Owners") on Bird's counterclaim against Auto Owners alleging breach of contract and bad faith refusal to pay an insurance claim and from a judgment in favor of The Insurance Store, Inc., on Bird's claim against it alleging fraud and negligent procurement of insurance. We affirm.
The following facts are undisputed: Ruby and Richard Hamm entered into an agreement with Bird to purchase Bird's house. The Hamms agreed to give Bird a promissory note for $30,000 and to assume the mortgage on the property that Bird had given to First Federal Savings and Loan Association of Chilton County ("First Federal"). Bird agreed to accept a second mortgage from the Hamms as security for the note. Bird conveyed the property to the Hamms; however, he retained possession of it. After the property was conveyed, Ms. Hamm applied to Auto Owners, through its agent, The Insurance Store, for a homeowner's insurance policy covering the house and its contents. Ms. Hamm represented to an employee of The Insurance Store that she and her husband intended to reside in the house, and she requested that they be named as the resident insureds under the policy and that First Federal and Bird be named as insured mortgagees. A policy was issued in accordance with Ms. Hamm's request. The Hamms never took possession of the property. In fact, the Hamms conveyed the property back to Bird. The house was later destroyed by fire; however, before that occurred, Bird defaulted on his obligation to First Federal, which foreclosed on its mortgage and bought the property at the foreclosure sale. No one associated with The Insurance Store or Auto Owners ever represented to Bird that he was covered under the policy. Approximately six months after the fire, Bird submitted a "Sworn Statement In Proof Of Loss" to Auto Owners, claiming proceeds under the policy issued to the Hamms for the loss of the house and its contents. The policy required that any claim made thereunder be submitted to Auto Owners within 60 days after the loss. The policy also stated that it was subject to rescission if a material misrepresentation was made in the application.
Auto Owners refunded the Hamms' premium, denied Bird's claim, and sued the Hamms, First Federal, and Bird, seeking a judgment declaring that it was not obligated *Page 396 
under the policy.[1] Bird counterclaimed, seeking damages for breach of contract and bad faith refusal to pay.[2] Bird also sued The Insurance Store, seeking damages for fraud and negligent procurement of insurance. The court entered a summary judgment for The Insurance Store; Bird appealed, but he presents no issues for review and no argument in regard to that appeal. Rule 28(a)(3) and (5); Hickox v. Stover, 551 So.2d 259, 265
(Ala. 1989); Mitchell v. Southern Guaranty Ins. Co.,485 So.2d 1138, 1140 (Ala. 1986). Because the judgment for The Insurance Store is due to be affirmed, its motion to dismiss the appeal on the ground of insufficient argument is hereby denied.
Summary judgment for Auto Owners was proper in this case if there was no genuine issue of material fact and Auto Owners was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on Auto Owners to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to Bird to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against him. DuPont v. Yellow Cab Co. ofBirmingham, Inc., 565 So.2d 190 (Ala. 1990). In determining whether there was a genuine issue of material fact, this Court must view the evidence in a light most favorable to Bird and must resolve all reasonable doubts against Auto Owners. The action against Auto Owners was pending on June 11, 1987; therefore, the standard of review applicable to its judgment is the "scintilla of evidence" rule. Ala. Code 1975, § 12-21-12.
As the undisputed facts show, Ms. Hamm made material misrepresentations to an employee of The Insurance Store when she applied for the policy. Therefore, Auto Owners argues, among other things, that it was entitled to rescind the policy under the terms of the policy, as well as under Ala. Code 1975, § 27-14-7.[3] Bird's argument, as we understand it, is that Auto Owners, through the actions of The Insurance Store, waived its right to rescind the policy, and modified it, by implication, so as to provide coverage to him under the insurance policy issued to the Hamms. In support of this argument, Bird submitted his deposition, in which he testified that shortly after the policy was issued to the Hamms, the Hamms submitted a claim to The Insurance Store, apparently on his behalf, for lightning damage to his satellite dish system that was located on *Page 397 
the property; that Auto Owners issued a check payable to the Hamms; that although he received payment from the Hamms, he informed a representative of The Insurance Store that he owned, and resided in, the house and that the damaged satellite system belonged to him, not the Hamms; that he requested The Insurance Store to have the check issued in his name, but that it refused to do so; and that he personally paid the premiums in cash at The Insurance Store up until the date of the fire. Bird's position, therefore, appears to be that, by allowing Auto Owners to pay the claim to the Hamms, upon their proof of loss, for Bird's damaged satellite system with notice that Bird, not the Hamms, was residing in the house and paying the premiums, The Insurance Store, acting on behalf of Auto Owners, waived Auto Owners' contractual and statutory right to rescind the Hamms' policy on the basis of a material misrepresentation in the application, and, by implication, recognized that Bird had coverage under that policy on the house and its contents as a resident owner, not as a second mortgagee. We disagree.
Although representatives of The Insurance Store disputed Bird's testimony, we are bound by our standard of review to accept his testimony as true. Even so, Bird's testimony does not create a genuine issue for trial. After Auto Owners made a prima facie showing that material misrepresentations had been made in the application and that it was entitled to rescind the policy, and had rescinded the policy, it was incumbent upon Bird to present sufficient evidence to avoid the entry of a judgment against him. Although Bird's testimony may, as he argues, create a factual dispute as to whether The Insurance Store considered him to be covered under the policy, it does not show that The Insurance Store had any authority to waive Auto Owners' contractual and statutory right to rescind the policy, or that it had the authority to otherwise bind Auto Owners contractually.
The record fails to show that The Insurance Store had the authority to do anything more than solicit and deliver insurance policies, collect premiums, or otherwise generally service policies on Auto Owners' behalf. We note that the policy specifically states that "[i]nterest in this policy may not be transferred without our [Auto Owners'] written consent." Thus, the record indicates that The Insurance Store was merely a soliciting agent for Auto Owners. In Washington National Ins.Co. v. Strickland, 491 So.2d 872, 874 (Ala. 1985), this Court stated:
 "An insurance company also has the right to employ agents with limited authority. Robinson v. Aetna Insurance Co., 128 Ala. 477, 30 So. 665
(1901). A 'special agent,' as distinguished from a 'general agent,' is authorized to act for the principal only in a particular transaction, or in a particular way. Southern States Fire Insurance Co., 199 Ala. [164], 171, 74 So. [63], 67. In the insurance context, the most prevalent type of special agent is the 'soliciting agent.' A soliciting agent is different from a general agent in that he has no power to bind his insurer principal in contract. Watson v. Prudential Insurance Co., 399 So.2d 285 (Ala. 1981). However, when a soliciting agent commits a fraud upon one who seeks insurance coverage, his insurer principal will be liable for that fraud, if the fraud was perpetrated by the agent within the scope of his employment."
Fraud is not at issue on this appeal. The only issue is whether Bird had any rights under the Hamms' policy; and, if he did, whether there was a bad faith refusal by Auto Owners to pay his claim. The Insurance Store did not have the actual authority to affect Auto Owners' rights under the policy. Did it have the apparent
authority to do so?
In Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 394,281 So.2d 636, 640 (1973), this Court wrote:
 "In Roberts Sons v. Williams, 198 Ala. 290, 73 So. 502, this court said:
 " 'Where the evidence shows that the actor has been held out by the alleged principal, as being his agent or as possessing the authority assumed by such agent within the scope of the principal's business, the doctrine of apparent authority can be invoked by one *Page 398 
who has been misled to his detriment. . . .'
 "The following was written in Automotive Acceptance Corporation v. Powell, 45 Ala. App. 596, 234 So.2d 593:
 " 'The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts. The following statement on the doctrine of apparent authority is found in Am.Jur.2d, Agency, Sec. 74, p. 476:
 " ' "The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority."
 " 'We would point out that Owens v. Wood, 43 Ala. App. 366, 190 So.2d 734, is to the same effect, and the Court of Appeals had this to say:
 " ' "In order to charge the principal because of apparent authority, a third party must prove that the principal manifested indicia of having cloaked the agent with the authority." Restatement, 2d Agency, § 49.'
 " 'Apparent authority' is such as a principal knowingly permits an agent to assume or holds him out as possessing. First Trust Joint Stock Land Bank v. Diercks, 222 Iowa 534, 267 N.W. 708. It seems to be generally held that an agent's apparent authority must be based upon the conduct of the principal and not of the agent. 2A C.J.S. Agency § 161; 3 Am.Jur.2d, Agency, § 75.
". . . .
 "A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers. Johnson v. Shook Fletcher Supply Co., [245 Ala. 123, 16 So.2d 406 (1944)].
 "The burden of proving an agency rests upon the party asserting its existence. City Stores Co. v. Williams, 287 Ala. 385, 252 So.2d 45; Dixie Auto Ins. Co. v. Steele, 288 Ala. 459, 262 So.2d 283; Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8."
Thus, it is well established that the acts of the agent cannot form the basis for a finding of apparent authority. Rather, the doctrine of apparent authority is based upon the principal's holding the agent out to a third person as having the authority under which he acts. We can find no evidence in the record of any acts on the part of Auto Owners that gave any appearance of authority on the part of The Insurance Store to transfer the policy to Bird. Other than the application, which lists Bird as the second mortgagee, there is no evidence that Auto Owners was ever informed about Bird. Under this state of the evidence, there was no basis for a finding of apparent authority on the part of The Insurance Store to bind Auto Owners in contract.
We note that Bird breached the 60-day notice provision in the policy by submitting his claim approximately 6 months after the house was destroyed by the fire, without showing any justification for the delay in submitting a claim. We also note that at the time of the fire, Bird had only a statutory right of redemption in the property and that he did not timely exercise that right. Because of our resolution of this matter, we need not determine what effect either of these facts would have had on the rights of Bird or Auto Owners under the insurance policy.
Summary judgment for Auto Owners was proper as to the breach of contract claim; consequently, it was also proper as to the bad faith claim. See Thomas v. Principal Financial Group,566 So.2d 735 (Ala. 1990); Hilley v. Allstate Ins. Co.,562 So.2d 184 (Ala. 1990).
89-1259 AFFIRMED. *Page 399 
89-1260 MOTION TO DISMISS DENIED; AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] A default judgment was entered against the Hamms. Auto Owners settled with First Federal and it was dismissed from the suit. The Hamms and First Federal are not parties to this appeal.
[2] Our review of the complaint indicates that Bird may have also stated a fraud claim against Auto Owners. However, the trial court treated Bird's complaint as stating only claims based on breach of contract and bad faith. Bird does not make an issue of the trial court's characterization of his complaint and he makes no argument that he is entitled to proceed with a fraud claim against Auto Owners. Accordingly, any argument that Bird could have made in this regard concerning the propriety of the judgment has been waived. Rule 28(a)(3) and (5) A.R.App.P.; seeHickox v. Stover, 551 So.2d 259 (Ala. 1989).
[3] Section 27-14-7 provides:
 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
 "(b) No plea of misrepresentation or fraud in connection with the issuance of a life insurance policy or annuity contract shall be filed unless accompanied by a payment into court of all premiums paid on the policy or contract."