Bell v. Mahin et al.

---

BELL v. MAHIN ET AL.

1. **Promissory Note**: SIGNED ON SUNDAY, DELIVERED ON MONDAY: VALIDITY. A promisory note signed on Sunday, but not delivered till Monday, is not invalid as being a Sunday contract.

2. ———: MATERIAL ALTERATION: WHAT IS: SURETY. Changing the payee in a note after it is signed by a surety is such a material alteration as will discharge the surety.

3. ———: ———: RATIFICATION BY SURETY: PROCURING EXTENSION. Where a surety on a promissory note, after learning of a material alteration of the note, made by his principal, seeks and procures an extension of time thereon, he thereby ratifies the alteration, and becomes bound by the note as changed.

4. ———: ———: ———: BURDEN OF PROOF. In such case the burden is upon the holder of the note, after the alteration has been established, to prove the facts constituting ratification.

*Appeal from Lee District Court.*

TUESDAY, OCTOBER 5.

THE plaintiff in this action holds a promissory note signed by the defendants, W. H. Mahin and W. E. Petty, made payable one year from date, and providing for interest at ten per cent from maturity, and for an attorney's fee of ten per cent. The plaintiff alleges that the note was to draw ten per cent interest from date, and that, by mistake, it was made to draw ten per cent interest only from maturity. He therefore asks that the note be reformed so as to bear ten per cent interest from date, and that he have judgment upon the note so reformed. The defendant Petty averred that the

note was executed upon Sunday; that after its execution it was materially altered; and that, at most, he was merely surety, and signed with an agreement between him and the principal maker that the note should not be delivered until the signature of one Kern had been procured as surety, which was not done. The defendant Mahin filed a cross-petition, as against his co-defendant, Petty, averring that he had turned out certain property to Petty, which the latter was to dispose of, and with the proceeds pay the note, and that he had enough property for that purpose; and prayed that Petty be held primarily liable for the full amount of the note, and himself be held merely as surety. Mahin admitted that the note should be reformed so as to draw ten per cent interest from the date thereof. The court rendered a decree against Mahin for the amount of the note, with ten per cent interest from date. It also rendered a decree in Mahin's favor, as against Petty, to the amount of $387.51, for property delivered by Mahin to Petty with which to pay the note; and provided that that amount should be applied on the judgment of plaintiff against Mahin, but held that Petty was not liable upon the note. The plaintiff appeals.

*J. F. Smith,* for appellant.

*Craig, Collier & Craig,* and *Van Valkenburg & Hamilton,* for appellees.

ADAMS, CH. J.—The first defense set up by Petty to the note is that it was executed upon Sunday. It seems to be undisputed that the note was signed on Sunday, but it was not intended to be delivered on that day, and was not in fact delivered until Monday. A promissory note becomes a contract at the time of its delivery. This contract, then, was made on Monday, and is not subject to the objection urged that it is a Sunday contract. As to the alteration, the fact appears to be that

1. PROMIS-SORY note: signed on Sunday, delivered on Monday: validity.

2. ——:
material al-
teration:
what is:
surety.
the note was drawn payable to J. H. Todd; who it was understood would advance the money which Mahin desired to borrow on the note. But Todd had made other disposition of his money, and Mahin applied to the plaintiff, Bell, who consented to make the loan. In this it seems that Petty was not consulted. The note previously signed by Mahin and Petty, and made payable to Todd, was changed by the erasure of Todd's name, and the insertion of that of Bell, and the note so changed was delivered to Bell, and is the note sued on.

While Petty's alleged liability is not greater than he intended to assume, it cannot be denied that the alteration was a material one, and Petty was not bound by the note unless he ratified the alteration. The plaintiff contends that he did ratify it. One of the alleged facts relied upon as constituting a ratification is that Petty, after he obtained knowledge of the alteration, applied to the plaintiff for an extension of time on the note, and obtained it. We do not understand that it is denied that if an agreement for extension was made and kept by the plaintiff, at Petty's request, and if the request was made after knowledge by Petty of the alteration, Petty should be held to have ratified the alteration. But Petty denies that he had knowledge of the alteration, and denies that he requested an extension.

The burden of showing a ratification is on the plaintiff, and the question is as to whether the ratification is shown by a preponderance of the evidence. On this point we have the testimony of the plaintiff and Petty. If their testimony were to be regarded as balanced, we could not say that the fact of ratification is proved. But, in our opinion, the weight of evidence is with the plaintiff. As to knowledge on the part of Petty of the alteration, we have to say that we think that it is shown by the testimony of Petty himself. The alteration was made by one Hill. Petty went to see the plaintiff in regard to

the note. On his way he saw, Hill, and Hill, it appears, informed him that the note had been altered. Petty's testimony is in these words: "I saw Hill as I was passing. I inquired for Mr. Bell. I did not know Hill had made the change until then. Hill said there was some change., From what I learned from Hill, I thought I was out of that note. I told him I expected I would have trouble about it. I went up to pay some money on it, but after Mr. Hill told me I changed my mind. I went there to look at the note. I did not offer to take it in my hand. I saw it was not like when I last saw it." Now, the only change consisted in the erasure of Todd's name, and the insertion of the plaintiff's, and that must have been what Petty saw, if he saw that the note was not as when he last saw it. We think that Petty's knowledge of the alteration is clearly shown.

As to whether the time was extended by the plaintiff, at Petty's request, there is some conflict in the evidence. The testimony of the plaintiff is as follows: "He [Petty] told me that he became pay-master on that note, and that he had come to beg for time. He asked for one year. I told him when it became due. I agreed to extend payment of the principal one year." On the other hand, Petty testified that he did not ask any extension of time. But he admits that he told the plaintiff that he was considerably involved, and that if men crowded him he should suffer considerably from it. He also testified as follows; "I suppose he bit at it. He proposed that he could wait." Without any question then, the conversation was such that the plaintiff understood Petty as applying for an extension, and Petty knew it. This, we think is sufficient to justify us in holding that the extension was at Petty's request.

We may say, also, that before this extension Petty had learned that Kern's name was not on the note. Without conceding, then, that the failure on the part of Mahin to obtain Kern's name would have constituted a defense, if no extension at Petty's request had been given, it is clear that

Petty could not properly be heard to complain of the want of Kern's name after such extension.

Whether the decree in Mahin's favor against Petty, based upon evidence of property turned over by Mahin to Petty, should not have been larger, we need not determine, as Mahin does not appeal.

The note cannot, we think, be reformed as against Petty, because we see no evidence that Petty had knowledge of any mistake in it. We think that Petty is liable for the amount of the note as it was drawn, and that in that respect the decree should be modified.

MODIFIED AND AFFIRMED.