C. C. Wertz, Appellee, v. Frank Shane, Appellant.

No. 42008.

July 18, 1933.

McNett, Kuhns & Brown, for appellant.

Jaques, Tisdale & Jaques, for appellee.

Anderson, J.—This case was exhaustively briefed and tried before the Honorable E. K. Daugherty, judge of the Wapello district court. It has been very ably presented in this court, both orally and by written briefs and arguments. We have carefully studied and considered the record as well as the many cases cited in the very exhaustive briefs filed by both parties. And for this court to attempt to analyze and distinguish all of the cited cases in a written opinion would serve no particular purpose and would extend this opinion to an unnecessary and almost prohibitive length. We feel that the profession can be fully advised as to the facts and as to the contentions of the parties by incorporating herein the opinion of the learned trial judge as prepared and filed in the case, and we quote the same verbatim:

"By the stipulation of facts it is shown that the plaintiff is and was at the times mentioned a resident citizen and taxpayer in Wa-

pello county, Iowa, and the defendants, Frank Shane, Leonard Simmer, and L. W. Hall were members of the Forty-third General Assembly of Iowa, which General Assembly of Iowa enacted a statute known as and found in chapter 1, section 1, of the Acts of the Forty-third General Assembly of Iowa.

"Said enactment provided that the members of the General Assembly should be paid their necessary expenses incurred while in attendance at a session of the Legislature, not exceeding the sum of five hundred dollars for any regular session.

"That pursuant to said legislative enactment, the said Frank Shane, Leonard Simmer, and L. W. Hall each filed expense bills and made claim for, and were each paid the sum of $500 for, expenses incurred while in attendance at said session of the Legislature.

"An examination of the copies of itemized claims attached to the respective petitions discloses that the expenses for which claim was made and paid in each instance were for room rent, meals, etc., and were personal expenses of the legislators rather than legislative expenses. The correctness of the copies of the expense bills is admitted.

"The plaintiff alleges that said act of the Forty-third General Assembly, chapter 1, section 1, is unconstitutional and violative of section 25 of article 3 of the Constitution of Iowa, which provides that no General Assembly shall have power to increase the compensation of its own members; that plaintiff has made written demand upon the defendant, Attorney General of Iowa, that he bring action to recover the moneys paid to the defendants for expenses pursuant to said statute; and that said Attorney General has in writing refused to bring such action; and the plaintiff as a taxpayer for himself and for all other taxpayers of the state of Iowa brings action to recover said moneys so paid, and for decree directing payment thereof to the treasurer of the state of Iowa.

"The legislative act, under which said expense accounts were paid, has recently been held unconstitutional in its entirety by the Supreme Court of Iowa in the case of George Gallarno v. Jas. W. Long, Auditor of State et al., 214 Iowa 805, 243 N. W. 719. Opinion being filed in that case on June 24, 1932, and after the submission of these three cases in the district court of Wapello county.

"The opinion cited settles the constitutional question involved in the cases under consideration, and were this the only legal question presented our inquiry would be at an end. However, the de-

fendants have set up certain affirmative defenses that require determination before judgment can be pronounced.

"These defenses are almost as grave and important as the constitutional question involved, and their determination may be of far-reaching effect. Briefly stated the defenses pleaded are:

"1. That the moneys sought to be recovered were voluntarily paid to the defendants, and were by them expended before the commencement of the suit, and hence cannot be recovered.

"2. That the plaintiff brings the suit as a taxpayer, and is affected in no other way than all other taxpayers, and hence is without right or authority to maintain these suits.

"3. That plaintiff's petition does not present a justiciable cause or controversy, and therefore the court is without jurisdiction to entertain these actions.

"4. That the expense accounts were duly approved and certified by the state board of audit, which has the final determination of the validity of said claims, and said determination is not subject to collateral attack.

"5. That plaintiff is guilty of laches in not objecting to said claim at or prior to its determination by the state board of audit, and hence cannot now recover in these actions.

"In their written argument filed, the defendants have not argued the questions presented by their answers in the order pleaded, but have restated the defenses relied on under six numbered headings, and in discussing these defenses we shall follow the order of defendants' argument, the first four of which may well be discussed together. They are:

"1. That the plaintiff taxpayer cannot maintain the suit.

"2. Plaintiff is seeking to do indirectly what he could not do directly, in that the proper procedure would be mandamus against a state officer to compel him to bring suit in behalf of the State.

"3. There is no statutory or constitutional authority authorizing the plaintiff or the state to recover in these actions.

"4. That these actions do not present a justiciable cause or controversy.

"The rule is well settled that a taxpayer of a municipality, such as a city, county, or school district, may maintain an action for injunctive relief protecting the funds and property of the municipality. Brockman v. City of Creston, 79 Iowa 587, 44 N. W. 822; Bay v.

Davidson, 133 Iowa 688, 111 N. W. 25, 9 L. R. A. (N. S.) 1014, 119 Am. St. Rep. 650.

"Defendants in their brief (page 3) state the law as follows:

'Taxpayers in their relationship to municipalities and in their relationship to various subordinate departments of government of one kind and another are analogous in that relationship to stockholders of a corporation and corporations. And from the old and well established doctrine that stockholders of corporations can bring suits to enjoin the illegal expenditure of money by corporations, and upon failure of the corporate officers to make proper demand, even bring suits on behalf of the corporation to recover money, the rule has developed that taxpayers of units of government which, like corporations, derive their existence from the State may maintain similar actions with respect to those subordinate units of government.'

"It is claimed, however, that this rule does not apply where the corporation involved is a sovereign state instead of a subordinate unit of government, such as a city or county.

"Many cases are cited so holding, including a decision of the Supreme Court of the United States. Frothingham v. Mellon, 262 U. S. 447, 477, 43 S. Ct. 597, 67 L. Ed. 1078.

"If this is the rule in Iowa, then the plaintiff's case must fail as not presenting a 'justiciable' cause or controversy, as our Supreme Court is committed to the rule that it will not entertain or determine a nonjusticiable cause or controversy.

"In State v. Executive Council, 207 Iowa 923, 223 N. W. 737, an action brought to test the constitutionality of the State Road Bond Act (Acts 42d Gen. Assem., Ex. Sess., ch. 2), Justice Evans, in refusing to entertain the action brought by the Attorney General as plaintiff, said:

'We have jurisdiction to entertain only justiciable causes prosecuted by a bona fide litigant whose private rights are alleged to be invaded by an unconstitutional act.'

"Proceeding, however, Justice Evans said:

'We shall therefore, treat the case as being maintained by Chrisinger, as sole plaintiff, who as a resident of the State and owner of taxable real estate therein, and the owner of an automobile, and

the payer of a license fee thereon, and the purchaser of much gasoline therefor, challenges the constitutionality of the act.' · ·

"Whether or not the right of either the Attorney General or the taxpayer to maintain the suit was challenged by the defense or was suggested by the court does not appear in the opinion. ·

"The question is one of jurisdiction, however, and the Supreme Court would give it consideration without the question being presented by the litigants. See Iowa Life Ins. Co. v. Board of Supervisors, 190 Iowa 777, reading on page 781, 180 N. W. 721.

"In other words, the question is inherent in the case itself whether raised by the pleadings or not. Consequently where the facts of the case bring it within the rule we must assume the court has determined the question whether it is discussed in the opinion or not.

"In the Road Bond case hereinbefore cited the court had up for consideration the matter of whether a justiciary cause was presented, and ruled that a taxpayer had such interest as to present a justiciable controversy for determination and could maintain the action. True, it is stated that the citizen plaintiff owned taxable real estate; also an automobile on which he paid a license and bought gasoline on which he paid a tax. But that is merely a finding that the citizen was a taxpayer. The fact that he was paying three different forms of tax, to wit; a property tax, a license tax and a sales tax would not alter his legal status.

"If the payment of one form of taxes did not give him a right of action, the payment of three forms of taxes certainly could not give him that right. The right of action, if it exists at all, is not based on amount of taxes paid, or on the form of the tax collected, but on the fact of the payment of taxes; and whether the amount paid is one dollar or ten thousand dollars is immaterial. If the right of action exists in favor of a taxpayer in one instance it exists in all instances. · ·

"Our Supreme Court has held repeatedly that the right of action in favor of a taxpayer exists against a municipality, and in the Road Bond case herein cited, and in the recent case of Gallarno v. Long, the Court has applied the same rule when the state funds were involved without making any distinction. ·Consequently we reach the conclusion that the distinction between a municipality and a sovereign state in the matter of a taxpayer's right to sue is not recognized in Iowa.

"If the right of a taxpayer to enjoin the wrongful expenditure of state funds exists, we see no reason why, in the absence of grounds of estoppel, he may not also sue to recover back, for the state funds wrongfully expended, if the proper officials refuse to act.

"It is next contended that the plaintiff, and the state as well, is estopped from demanding the repayment of funds voluntarily paid to the defendants under the law duly enacted, and in full force and effect at the time of payment.

"This position is somewhat weakened by the determination by the Supreme Court that the law under which the payment was made was unconstitutional and hence void.

"While it is true that the law of estoppel applies to states as well as individuals, yet even as between individuals the doctrine of estoppel is based upon a change of position of the parties, so that the party against whom the estoppel is invoked has received a profit or benefit, or the party invoking the estoppel has changed his position to his detriment, so that it would be unconscionable to permit the other to assert thereafter the true facts.

"And where neither of these conditions exist, or will result, no estoppel in pais arises.

"In the cases at bar neither the state of Iowa nor the plaintiff, Wertz, have received any benefit from the payment of the money to the defendants, nor have the defendants sustained any loss or injury from receiving the money, consequently no estoppel is established.

"As to the application of the rule as to voluntary payment of moneys, it may be said this rule only applies between individuals when the payment is made with knowledge of the facts.

"In this case we indulge the presumption that both the officers of the state in making the payment and the defendants in receiving it acted in good faith, and without knowledge that the payment was illegal, and mutual mistake is always a ground of equitable relief. On the other hand, if we act on the principle that all persons are presumed to know the law, and hence that we hold that both the state officers and the defendants should be held to have known that the law under which the payment was made was invalid, then it becomes a matter of fraud, and the state cannot be bound by the acts of its officers when perpetrating a fraud on the state. We thus reach the same result in either way.

"Finally it is urged that the accounts were audited and approved by the state board of audit, and that the action of said board was a

final determination of their validity which is not subject to collateral attack, and that the plaintiff is guilty of laches in not objecting to the claim at or prior to the time of its determination by the state board of audit.

"The defendants have not cited any authority in support of their claim that the plaintiff was guilty of laches.

"There is no evidence tending to show that the defendants gave any notice of the filing of their claims, or that any notice was given of a hearing on them. Nor is there any evidence that the plaintiff knew of the filing of said claims, or knew that the board of audit proposed to allow same in violation of law.

"The law required that the board of audit before approving a claim should determine, 'that the creation of the claim is clearly authorized by law'. Under these circumstances the plaintiff surely cannot be held to be guilty of laches in not anticipating that the board of audit would not discharge its legal duty.

"We next inquire: Is this action a collateral attack upon the judgment of the board of audit?

"The board of audit was created and governed by the provisions of chapter 25 of the 1927 Code of Iowa (section 391 et seq.). Section 394 of the Code imposes upon the board certain duties in the auditing and allowing of claims. No provision is made for any appeal from its decisions, nor for any direct action to set aside its findings. Is its decision therefore final and conclusive in all cases?

"The board of audit is composed of the Attorney General, the auditor of state, and the director of the budget. Neither the auditor of state nor the director of the budget are required to be lawyers; both offices may properly be filled by laymen. Grave constitutional questions may, as in the case of these claims, come before the board of audit for determination. The board may decide by a majority vote; hence, it follows that grave questions of law, even constitutional questions, may, if the defendants' contention is correct, be decided by the vote of two laymen, and neither the state nor citizens have any recourse from such decision.

"Suppose in the cases at bar, for instance, that the legislative act had been constitutional, but the board of audit had thought otherwise, and had refused to allow the claims, would the legislators have been unable to have pursued any other remedy, and therefore been deprived of payment of their claims? They could not appeal, for no appeal is authorized, and if they could not resort to the courts

in an independent action, then the members of the legislature would have been unable to collect the money legally due them.

"I am clear that such is not the law, and that any one aggrieved by the action of the board may resort to the courts for relief by an independent suit, and that such suit is not a collateral attack upon the finding of the board of audit. I think that the action of the board of audit should be held analogous to the action of a board of supervisors of a county in allowing or refusing claims.

"Having considered all the questions presented, I find and hold that the plaintiff is entitled to recover the amount claimed from each of the defendants for the use and benefit of the state of Iowa."

We hereby approve and adopt the foregoing opinion with its declarations and pronouncements of the law of this state as applicable to the record here presented, in so far as it authorizes a taxpayer to prosecute suits to recover money received by the defendants in violation of the Constitution. The defenses of laches, estoppel, and that the suits are collateral attacks upon the action of the board of audit contain no merit. It follows that the court did not err in entering judgment and decree in accordance with its findings and opinion, and such opinion, judgment, and decree is hereby affirmed. The motions to strike amendments to abstract are hereby overruled.— Affirmed.

All Justices concur.