STATE BANK OF WAVERLY, a Corporation, Appellee, v. EMMA McCOY, Appellant, et al.

No. 45813.

APRIL 7, 1942.

REHEARING DENIED OCTOBER 2, 1942.

Wehrmacher & Rewoldt and Sweet & Sager, all of Waverly, for appellant.

Hagemann, Hagemann & Hagemann, of Waverly, for appellee.

STIGER, J.— The sole question on appeal is whether appellant is liable on the notes. Her defenses to the notes are (1) that she received no consideration for her signature and signed the notes and mortgage for the sole purpose of relinquishing her dower interest, and (2) that she was a surety on the notes and was discharged by an extension agreement granted the principals on the notes by appellee without her consent.

I. On March 3, 1926, M. J. McCoy and his wife, Emma McCoy, appellant, and others, executed and delivered the notes and mortgage which are the subject matter of this suit to appellee, the State Bank of Waverly.

In 1914, W. H. Auner entered into a written contract with O. H. Thomas for the purchase of the real estate involved in the mortgage. Auner then entered into a contract for the sale of the land to M. J. McCoy, husband of appellant. Later, Auner entered into a new contract for the sale of the land to McCoy, Saylor, and Smith.

In 1921, this second contract was canceled, and Mr. Thomas, the owner of the land, sold and conveyed it to McCoy, Saylor, and Smith. McCoy, appellant, Smith, and Saylor and his wife executed and delivered a purchase-price note to Thomas on March 1, 1921, in the sum of $19,000, due in 1924, secured by a mortgage on the premises. Smith then sold his interest in the real estate to J. A. Krause.

In 1924, Thomas tried to sell the note and mortgage to the appellee, which refused to buy because it thought the mortgage was "pretty heavy."

The note being due, McCoy, Saylor, and Krause, sometime prior to March 1, 1926, went to appellee and stated that Thomas was insisting on payment of the note and asked for a loan of $20,000. Appellee's appraisers appraised the land at $26,000.

The cashier of the bank, who negotiated the loan, stated:

"I finally said to them this, 'I have known you for a long time, you have done considerable business with the bank, I would like to help you out, I believe that we can get a loan for twenty thousand dollars through if you people, all three of you, and your wives will sign the notes and the mortgage.' I took that matter up with some of our people and we finally decided that we would make that loan that way; the discussion was this, that Mrs. McCoy owned a farm and John Krause owned property, and Mrs. Saylor owned property and Mr. Saylor owned property, and I remarked to them when they came in, 'I am going to make this loan to you because I consider you people good' and I said 'If you people all six of you, your wives and yourselves, will jointly sign notes and mortgage for twenty thousand dollars, and that to be secured by a mortgage on this two hundred and ten or twelve acres of land' I don't know exactly what there is but it is about that, 'We will make you the loan' and they said they did not need it until March 1st, but that at that time Mr. Thomas would be up and knew he would be glad to get his money because he was threatening to take some action; and on the 3rd day of March, 1926 Mike McCoy and Mrs. McCoy that is M. J. McCoy and Mrs. Emma McCoy, W. W. Saylor and Mrs. Kittie Saylor, John Krause and Jennie Krause came into the bank, I wrote out the papers, made three notes, one for ten thousand, one for five thousand and one, another one of five thousand dollars, and a mortgage. I read the notes and mortgage to them and then I asked Mr. McCoy to sign and he signed, and I asked Mrs. McCoy to sign and she signed, and Mr. Saylor signed and she signed, and Mr. Krause and his wife both signed. They had applied for a loan of twenty thousand dollars, I drew the papers, the three notes for ten thousand, five thousand and five thousand, and a mortgage for twenty thousand dollars securing those notes; I had told the people that they must all sign the notes and mortgage, and they did without any objection whatsoever."

When the purchasers completed the execution of the instruments the cashier paid the amount due Mr. Thomas on the $19,000 note, which was signed by appellant, and received a release of the Thomas mortgage. This testimony is uncontradicted.

The transactions with Auner, Thomas, and appellee were separate and independent.

In denying her liability on the $19,000 note executed and delivered to Mr. Thomas in 1921, appellant testified that when her husband told her he had purchased an interest in the farm she replied:

"I will sign no note, he said all you will have to do, he said, you can sign your dowry away, you would have no claim on the place whatever, you will get nothing out of it or receive nothing or give nothing; and I said well then if I sign it then I will have nothing to pay on that farm, he said no, * * *."

The witness further testified:

"When I signed this $19,000 mortgage and note to O. H. Thomas, I had no intention or understanding that I would be binding myself personally. I had no intention of binding myself. I did not sign for any other reason or purpose than to sign off my dower interest in the property. My husband told me I would have no claim on it. I didn't understand or wasn't told by anyone that I would be personally liable by reason of signing the note and mortgage. At the time that I signed the note and mortgage for $19,000, I don't think that I saw O. H. Thomas. I done what my husband told me, signed the note and mortgage and went home."

Appellant does not claim that she told Mr. Thomas she did not intend to be personally liable on the note and that she signed it for the sole purpose of relinquishing her dower interest. There is nothing in the record to suggest that Mr. Thomas did not rely on appellant's signature on the note given in payment for the real estate. The only contract between Thomas and the purchasers was the note and mortgage; that is, there was no prior contract of sale between Thomas and the grantees in the deed.

The contract was between Thomas and appellant and the other signers of the note. Appellant's intention not to be liable on the note was not communicated to Thomas. We agree with the trial court's conclusion that appellant was personally liable on the Thomas note.

Appellant's testimony in regard to appellee's notes is similar to that given with regard to the Thomas note. She testified:

"My husband talked to me about the notes and mortgage he wanted me to sign at the bank. He said if I would·sign them, I would sign away my dowry, but I would have no claim on them whatever or receive anything from it, and I done as he told me. I signed the notes and mortgage at the bank in this suit with that understanding and intention."

The witness further testified that she did not receive any money from appellee; that no one at the bank told her that the loan would not be made unless she signed the notes; that she signed the notes and mortgage for the sole purpose of releasing dower.

After the notes and mortgage had been read to appellant at the bank she signed the instruments without protest and did not object to the payment of the Thomas note, which she had signed, from the proceeds of the loan. Appellant does not claim that she told appellee of her intention not to be personally liable on the notes or that the bank had such knowledge when it made the loan.

The bank's contract was with the signers of the notes. The loan was made on the condition that "all six of you, your wives and yourselves, will jointly sign notes and mortgage for $20,000." The bank had no reason to believe the relation of appellant to the notes was other than that of comaker. The notes imported a consideration and it clearly appears that their consideration was the furnishing of funds by appellee to the makers to pay the Thomas note on which appellant was liable.

Appellant does not allege either actual or constructive fraud on the part of the bank.

■ This court has frequently been called on to pass on the liability of a wife on a note and mortgage executed with her

husband. Appellant relies on LeFleur v. Caldwell, 196 Iowa 727, 195 N. W. 234; Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345; First Bk. & Tr. Co. v. Welch, 219 Iowa 318, 258 N. W. 96; Insell v. McDaniels, 201 Iowa 533, 207 N. W. 533; Cooley v. Will, 212 Iowa 701, 237 N. W. 315; Jones v. Wilson, 219 Iowa 324, 258 N. W. 82. In each of these cases there was a prior executory contract for the purchase of real estate by the husband. The wife was a stranger to the contract. It was not contemplated by the parties to the contract that the wife would be liable on the note. The payee did not rely on the signature of the wife in paying the money. In each case the contract between the vendor and the husband was completed and the wife signed the note and mortgage for the sole purpose of conveying her dower interest in the real estate. In each case the execution of the note by the husband would have constituted full performance of the contract.

The facts in this case do not bring it within the scope of the cited cases. In this case there was no prior executory contract between the bank and McCoy. The notes and mortgage signed by appellant constituted the contract. Her liability and that of her husband accrued at the same time, under the same contract, and pursuant to the same consideration.

Appellant failed to show that in making the loan the bank did not rely on her signature and that she received no consideration. The evidence is to the contrary.

The decision in this case is controlled by Northern Tr. Co. v. Anderson, 222 Iowa 590, 262 N. W. 529, 271 N. W. 192; First Tr. JSL Bk. v. Diercks, 222 Iowa 534, 267 N. W. 708; Andrew v. Ingvoldstad, 218 Iowa 8, 254 N. W. 334; Starry v. Starry & Lynch, 212 Iowa 274, 234 N. W. 281; American Com. & Sav. Bk. v. Kramer, 206 Iowa 49, 219 N. W. 931.

In Northern Trust Co. v. Anderson, supra, page 597 of 222 Iowa, page 533 of 262 N. W., the court, speaking through Mr. Justice Donegan, said:

"What competent evidence was there before the court tending to show that the money would have been paid on this note without the wife's signature? There was no pre-existing contract which required the bank to part with the money without her signature on the note. There was no pre-existing debt of the

husband alone to the bank, and no evidence of any facts or circumstances attending the execution of the note indicating that it was not her intention to be bound on the note, * * *. Much stress seems to be placed upon the claim that the appellee did not intend to become liable on the note and that the note was signed along with the mortgage merely for the purpose of releasing her dower. The note itself, however, imported consideration, and the burden was upon appellee to show absence of consideration. * * * There was no ambiguity in the language of the note for the purpose of clearing up which parol evidence of intention could be received. Parol evidence was not admissible to show that the appellee in signing the note had some secret intention which was not communicated to the bank, and, even if she had such secret intention, it would not tend to prove that the bank did not part with the money in reliance on her signature on the note.''

In First Tr. JSL Bk. v. Diercks, 222 Iowa 534, 543, 267 N. W. 708, 713, the court, in considering a similar defense to a note, said:

''Appellants contend that the case falls within the rule announced in Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345, and Gorman v. Sampica, 202 Iowa 802, 211 N. W. 429, and similar cases, wherein there had been a prior executory written contract entered into by the husband to which the wife was not a party, and in these cases we held that the signature of the husband to the note in question operated as a full performance of the executory contract previously existing. These cases represent an exception to the general rule, and this court has gone farther in this regard than most jurisdictions, and unless the rule itself is to be totally disregarded, we should be careful to confine the exception within well-defined lines.''

In Starry v. Starry & Lynch, 212 Iowa 274, 278, 234 N. W. 281, 283, the defendant, as does the defendant in this case, relied on LeFleur v. Caldwell and Insell v. McDaniels, supra, in support of a like defense. On the question of consideration for the note, the court said:

''It is the general rule of law that where a contract has the support of a consideration, such consideration is applicable

to every original party thereto. * * * To that general rule we have recognized an exception in the cited cases. [Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345; LeFleur v. Caldwell, 196 Iowa 727, 195 N. W. 234; Insell v. McDaniels, 201 Iowa 533, 207 N. W. 533.] It is an exception, which has not been largely recognized in other jurisdictions. An exception to a general rule of law, is to be carefully applied within strict lines, lest by its expansion it destroy the rule itself.''

II. Appellant has failed to sustain her burden of proving she was a surety. Her testimony is that she signed the notes for the sole purpose of relinquishing dower and that she had no intention of creating a personal liability of any kind. The bank stipulated the notes must be signed jointly by the husbands and wives. They all appeared—including appellant—and signed the notes and mortgage in the presence of the cashier. Her status on the note, as to appellee, was that of a principal or comaker, and as such she received the benefit of the loan through payment of the Thomas note.

If appellant were a surety, the burden would be on her to show appellee had knowledge or notice of the relation. The record does not charge the bank with knowledge of such suretyship as to its own notes or the Thomas note.

In Morgan v. Thompson, 60 Iowa 280, 283, 14 N. W. 306, 308, the court said:

''The privilege of a surety is an equity which will not defeat the rights of those who have no knowledge of its existence. When the suretyship is not shown upon the face of the note, notice thereof to the creditor must be proved, in order to enable the security to avail himself of the protection the law secures to him.''

The only conclusion justified by this record is that the trial court was right in finding and adjudicating that appellant was personally liable to the appellee on the notes. The case is affirmed. —Affirmed.

BLISS, C. J., and MILLER, WENNERSTRUM, MITCHELL, GARFIELD, HALE, and OLIVER, JJ., concur.

SAGER, J., takes no part.