E. W. KNAPP, appellee, v. LENORE I. KNAPP, now known as LENORE KNAPP HUSTED, appellant.

No. 49844.

(Reported in 99 N.W.2d 396)

NOVEMBER 17, 1959.

R. K. Craft, of Adel, for appellant.

Dykstra, Swift & Brown, of Des Moines, for appellee.

PETERSON, J.—In 1951 Floyd Knapp and his wife, Lenore, defendant herein, were engaged in general farming and stock raising on a farm in Dallas County. Defendant held the title to the farm. The farm bank account was in the name of Floyd Knapp. Defendant engaged in the farm work with her husband and kept the books as to the farming operations. On September 19, 1951, Floyd Knapp attended a public farm sale and purchased 131 head of sheep and three calves. He gave a check as payment in the amount of $2944.85 on the Redfield office of Dallas County State Bank. He had a bank balance of only $142.47.

On the morning of September 20, 1951, Mr. and Mrs. Floyd Knapp came to the office of plaintiff in Des Moines to arrange a loan from him to cover the check and to secure additional capital for farming operations. Plaintiff was the son of Floyd Knapp and Lenore was his stepmother. Plaintiff was in the

business of processing and selling crushed stone, sand and gravel for road building purposes. In 1938 he had organized a corporation known as M. O. Weaver, Inc. He was the owner of all stock in the corporation. Until its dissolution in 1952 he had maintained his business under the name of the corporation.

Defendants made arrangement for a loan of $5000 from plaintiff. As evidence of the loan they executed and delivered two promissory notes, each in the amount of $2500, payable on demand. To secure the notes they executed to plaintiff a chattel mortgage on the sheep and calves purchased, together with 100 spring pigs and 15 sows. Because plaintiff desired to give defendants a check for the $5000 from his corporation account he made the notes and chattel mortgage payable to "M. O. Weaver, Inc., and/or E. W. Knapp." The check was made payable to Floyd Knapp. It was deposited the same day in the Redfield bank.

The only interest ever paid by the makers of the note was $123.32 in 1952. Floyd Knapp had been an employee of M. O. Weaver, Inc., for some time, and even though he became inactive in his work, plaintiff continued to pay him wages at $50 per week, less deductions for social security. After dissolution of the corporation plaintiff personally continued to pay his father the wages until 1953 when Floyd Knapp became eligible for and secured social security. The last wage check paid by plaintiff to his father was in May 1953, in the amount of $1050. Floyd Knapp endorsed the check and turned it back to his son to be applied on the principal of one of the $2500 notes.

In 1954 Mr. and Mrs. Floyd Knapp had a farm sale and sold the balance of the stock specifically described in the chattel mortgage. The mortgage covered not only the specific animals, but "all the natural increase of such property, and any additions thereto, and substitutions for said goods and chattels of whatever nature or kind." The trial court held in its findings of fact that there was a question as to whether all this additional property had been disposed of, and on that basis foreclosed the chattel mortgage.

Plaintiff dissolved the corporation, M. O. Weaver, Inc., on April 28, 1952. Since he was the sole owner, the corporation executed a written assignment to him of all assets of the corpo-

ration, which included the notes and chattel mortgage involved in this action. After the dissolution of the corporation plaintiff scratched out with pen and ink in the two notes and the chattel mortgage the words "M. O. Weaver, Inc., and/or."

Floyd Knapp departed this life October 10, 1954. Prior to his death plaintiff had written on one of the notes the following words in pencil " 'In event of my death this note is null and void. E. W. Knapp.' " He wrote on the chattel mortgage in pencil the following words: " 'In event of my death this mortgage is null and void.' " He also wrote in pen and ink on the bottom of the chattel mortgage the following words " 'In event of E. W. Knapp's death savings bonds held jointly by me and Floyd Knapp will about offset this mortgage and notes. E. W. Knapp.' " The last quoted statement was scratched out in pen and ink by three crosses superimposed on the statement.

Plaintiff testified that from 1947 to 1949 he bought and paid for government bonds out of his own funds, which amounted approximately to the same amount as the notes, and in said bonds he had provided that same should be payable on his death to his father. After his father died in October of 1954, he cashed the bonds in December of that year. Defendant remarried, and her name is now Mrs. Husted.

After his father died he filed a claim for the two notes in his estate, but apparently the estate was insolvent since the farm was in the name of defendant. The record does not disclose any payments through the estate on the notes, and defendant alleges none.

April 5, 1955, plaintiff demanded payment on the notes from defendant. Since payment was not made, this action on the notes and for foreclosure of the chattel mortgage was filed October 1, 1957. The trial court entered judgment for $3950, the unpaid amount of principal on the two notes, together with interest in accordance with the terms of the notes, and decreed foreclosure of the chattel mortgage. Defendant has appealed.

Appellant alleges four errors as basis for reversal:

1. Defendant received no consideration for the notes and mortgage signed by her. 2. Plaintiff is barred from recovery by reason of equitable estoppel. 3. Plaintiff is not the real party in interest. 4. There was a material alteration of the two notes

and the mortgage, upon which basis plaintiff's petition should have been dismissed.

I. Appellant contends there was no consideration as to the two notes as far as she was concerned. She testified her husband and plaintiff went into a private office, and she sat in another room for an hour while they were conferring. She was then called in to sign the notes and the mortgage. She states she read all three documents with the exception of the very fine print and then signed. She contends this only makes her liable as a surety and that she was not a party to the transaction itself. She also contends that there was no consideration as far as she was concerned because the check had been delivered by plaintiff to her husband prior to the time she signed the notes and the mortgage. These contentions are extremely technical. They are without merit both as to the facts in the case and as to the legal principles involved.

There is conflict in the evidence as between plaintiff and defendant. Plaintiff testified: "They were signed, both the mortgage and two notes, in the presence of all parties concerned. I then drew a check on M. O. Weaver, Inc., for $5000 and I personally signed the check and delivered it to my father in the presence of Lenore."

The trial court observed the witnesses and heard the evidence of both parties to this action. It had the opportunity to see the demeanor of the witnesses, and the frankness, or lack thereof, as to such witnesses. The trial court accepted plaintiff's evidence as to the conditions under which the loan was made and the notes and mortgage signed.

This conflict in the testimony is not too important. The documents speak for themselves and in the absence of any fraud or mistake are conclusive as to both makers. This principle is firmly established as to negotiable instruments, not only by statute, but by many decisions of this court.

Section 541.24, Code of Iowa, 1958, provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

In the case at bar the evidence shows without dispute that defendant and her husband were jointly engaged in farming

operations in Dallas County. The $5000 which they secured from plaintiff was deposited in the farm bank account and was used for the benefit of both parties.

In connection with the execution and delivery of the notes and the mortgage, consideration was implied as to both parties unless defendant could establish by the burden of proof that it was otherwise. Northern Trust Co. v. Anderson, 222 Iowa 590, 262 N.W. 529, 271 N.W. 192; Manchester v. Loomis, 191 Iowa 554, 181 N.W. 415; Commercial National Bank of Charles City v. May, 187 Iowa 888, 174 N.W. 646; Krcmar v. Krcmar, 202 Iowa 1166, 211 N.W. 699; Hoover v. Hoover, 228 Iowa 981, 291 N.W. 154; State Bank of Waverly v. McCoy, 232 Iowa 456, 3 N.W.2d 141; Starry v. Starry & Lynch, 212 Iowa 274, 234 N.W. 281. Defendant offered no evidence to negative consideration.

In Northern Trust Co. v. Anderson, supra (page 597 of 222 Iowa), this court said: "The note itself, however, imported consideration, and the burden was upon appellee to show absence of consideration." This was approved and again quoted in State Bank of Waverly v. McCoy, supra.

In Hoover v. Hoover, supra (page 985 of 228 Iowa), the court stated: "Execution and delivery having been established, the note is presumed to have been issued for a valuable consideration and the burden of showing lack of consideration is on defendant."

Where executed documents have the support of consideration, and we hold there was consideration in this case, the notes or contract are applicable to every original party thereto. Starry v. Starry & Lynch, State Bank of Waverly v. McCoy and Northern Trust Co. v. Anderson, all supra.

In Starry v. Starry & Lynch, supra, we said at pages 278, 280 and 281 of 212 Iowa: "In other words the obligation of each signer became effective at the same time. The obligation of neither preceded that of the other. The consideration of the contract became operative upon both parties simultaneously. * * * It is the general rule of law that where a contract has the support of a consideration, such consideration is applicable to every original party thereto. * * * The note in suit was executed and delivered in purported consummation of the contract. It

was accepted as such. It had a lawful consideration. Under the general rule, such consideration operated upon *all the contemporaneous signers thereof."* (Emphasis ours.)

II. Appellant contends plaintiff's petition should have been dismissed because of equitable estoppel.

Appellant's basis for this contention is that plaintiff permitted his father, Floyd Knapp, to sell livestock, which was included in the chattel mortgage, from time to time and at a general farm sale. Also that plaintiff kept his father on his pay roll in his business and paid him wages regularly up until he started to draw social security. That instead of paying him wages for 1951, 1952 and part of 1953 he should have applied such payments on the promissory notes.

It is a fundamental principle of estoppel that the party against whom the estoppel is asserted has received a benefit, or the party asserting the estoppel has changed his position to his detriment. City Bank of Mitchellville v. Alcorn, 188 Iowa 592, 176 N.W. 628; Wertz v. Shane, 216 Iowa 768, 249 N.W. 661.

Under the record in this case plaintiff received no benefit either from the sale of stock or the payment of wages. In fact, defendant received the benefit when stock was sold from the joint farming operation of herself and her husband. She was not injured in any manner. She controlled the farm situation as well as her husband and if she did not want the mortgaged stock sold she could have stopped such sale or if she wanted the proceeds paid on the notes and mortgage she was in a position to have such application made. As to the wages they came into the family, and defendant received equal benefit therefrom with her husband.

In City Bank v. Alcorn, supra, at page 594 of 188 Iowa, page 629 of 176 N.W., this court said: "An estoppel is not favored in the law, and strict proof of all its elements is demanded. Baldwin v. Lowe, 22 Iowa 367; Anfenson v. Banks, 180 Iowa 1066 [163 N.W. 608, 616, L. R. A. 1918D 482]." The court further stated: "In cases other than those involving inconsistent conduct in court, there is no estoppel unless there be prejudice shown."

In Wertz v. Shane, supra (page 773 of 216 Iowa), we quoted from a decision of the Supreme Court of the United States, Frothingham v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, as follows: "* * * the doctrine of estoppel is based upon a change of position of the parties, so that the party against whom the estoppel is invoked has received a profit or benefit, or the party invoking the estoppel has changed his position to his detriment. * * * where neither of these conditions exist, or will result, no estoppel in pais arises."

■ III. Appellant contends plaintiff was not the real party in interest. She bases this contention on the fact that M. O. Weaver, Inc., was also a payee on the notes and mortgage and the check issued by plaintiff was on the bank account of Weaver, Inc. The notes and mortgage were originally made payable to M. O. Weaver, Inc. and/or E. W. Knapp. Until Weaver, Inc., was dissolved either payee holding the paper could have sued.

The testimony shows without dispute plaintiff was the sole owner of the notes and mortgage at time of commencement of the action. When M. O. Weaver, Inc., was dissolved in 1952, the assignment executed and delivered by the corporation transferred all ownership in the notes and mortgage to plaintiff. If M. O. Weaver, Inc., had an interest in the transaction when it was made, the interest was assigned to plaintiff long before commencement of this action.

Statutory provisions also sustain plaintiff's position. Section 541.51 provides: "The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument."

Section 541.192 provides: "In this chapter, unless context otherwise requires: * * * 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

It was undisputed plaintiff was the holder and in possession of the negotiable instruments involved in this action, and was therefore authorized by statute to maintain the action.

IV. Appellant contends scratching out the name of M. O. Weaver, Inc., in the two notes and mortgage, the placing of pencil notations on one note and the mortgage, and the pen-and-ink notation on the mortgage, with reference to bonds, constitute material alterations.

Section 541.125, 1958 Code of Iowa, provides:

"Alteration of instrument—effect of. Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

Section 541.126 states:

"What constitutes a material alteration. Any alteration which changes:

"1. The date.

"2. The sum payable, either for principal or interest.

"3. The time or place of payment.

"4. The number or the relations of the parties.

"5. The medium or currency in which payment is to be made.

"Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

█ These sections have been interpreted in many cases. In order to constitute a material alteration the words added or erased must enlarge or add to the contractual obligation of the party bound by the paper, or must vary its original legal effect to the prejudice of such party. Iowa Valley State Bank v. Sigstad, 96 Iowa 491, 65 N.W. 407; Throp v. Chaloupka, 202 Iowa 360, 208 N.W. 299; Consolidated Constr. Co. v. Begunck, 233 Iowa 463, 9 N.W.2d 390; In re Estate of Talbott, 200 Iowa 585, 203 N.W. 303; James & Haverstock v. Dalbey, 107 Iowa 463, 78 N.W. 51; Wentland v. Stewart, 236 Iowa 661, 19 N.W.2d 661, 161 A. L. R. 1206; Schafer v. Jackson, 155 Iowa 108, 135 N.W. 622.

█ In James & Haverstock v. Dalbey, supra, the payee inserted the numeral "6" in the note after it was executed, filling in a blank which stated "at the rate of .... per cent." In the decision the court said at page 469 of 107 Iowa: "It is a com-

monplace that an alteration, to avoid a note, must be material; that is, it must so change the legal effect of the instrument as to make it express a promise different from that which the parties in fact made. * * * If the law would have supplied the matter introduced into the writing, such insertion will not be deemed a material alteration. * * * the law affixed the rate, to wit, six per cent. Adding the figure 6 in the blank did not, therefore, change its legal effect."

In re Estate of Talbott, supra, notes in the amount of $50,716.11 were executed to one partner, John H. Himmelberger. They were signed by M. A. Talbott & Company; M. A. Talbott, John H. Himmelberger and E. B. McConnell, the three partners. After the notes were executed the partnership was dissolved, and in the dissolution the obligation of McConnell on the notes was canceled. He then scratched out his name on the notes. The court said (page 593 of 200 Iowa): "We conclude that the erasure of McConnell's name, under the circumstances, did not invalidate the notes." In support of its position the court cited Young v. Currier, 63 N. H. 419. In this case a minor, who had signed a note with another, on arriving at majority, repudiated his act in signing the note and the holder erased his name. The erasure, under such circumstances, was held to be an immaterial alteration.

The above statements are analogous to the case at bar. After Weaver, Inc., was dissolved plaintiff erased the name of the corporation by scratching it out. It was not an act which was prejudicial to defendant, nor enlarged her obligation.

In Throp v. Chaloupka, supra at page 363 of 202 Iowa, this court stated: "It seems clear to us that the alterations of the trust agreement of which appellants complain in no manner affected their legal liability or that of any person bound by the several transactions, and are, therefore, immaterial."

In Consolidated Constr. Co. v. Begunck, supra, a contract was signed by Wm. Burton as an agent. Afterward without knowledge of the other contract holder the name Wm. Burton was erased and the name of another agent "Carl H. Voss" was substituted. The decision holds at page 477 of 233 Iowa:

"The appellant complains on appeal that the erasure of the signature 'Wm. Burton' from the contract and the substitution

of the signature of 'Carl H. Voss' in its stead was a material alteration of the contract, and since the substitution was conclusively established to have been made without the knowledge or consent of the appellant, after the execution of the contract and its delivery to Burton for the appellee, the validity of the contract was thereby destroyed. The trial court, as noted herein, found that the alteration was not material. We agree with this finding. It is a general rule in this state and elsewhere that an alteration of a written contract, to be material, must be a change 'which enlarges the contract, adds to the obligation of the party bound by the paper or varies its original legal effect.' "

With reference to the pencil notation that the note and mortgage were to be void in case of death of plaintiff, and the notation with reference to the government bonds in which he made his father a payee, in case of death, again there is nothing in these memoranda on the documents which in any manner adds to defendant's obligation or which is prejudicial to her. The bonds had been cashed in, and the other matters did not become effective until plaintiff's death. If in the nature of a gift defendant could claim no benefit therefrom, unless the gift had been consummated by delivery of the documents to defendant or her husband.

In Wentland v. Stewart, supra (page 663 of 236 Iowa), the claimed alteration of a note was that in the upper left corner of the face of the note the payee had written the following notation: "12/27/41. Extended to 12/1/43, G. A. Wentland." The court said: "As a memorandum it fails of its purpose, but it is not an alteration invalidating the note, although written thereon."

Appellant's counsel emphasizes paragraph 4 of the provisions of section 541.126 which states a material alteration is present if it changes "the number or the relations of the parties." Appellant contends the number of the parties was changed when the words "M. O. Weaver, Inc.," were scratched out. This provision of the statute must be interpreted on the basis of the judicial principles which have been developed as to "material alteration."

Since plaintiff was sole owner of Weaver, Inc., when the notes were executed, and until the corporation was dissolved,

the scratching out of the corporation name as a payee did not materially or prejudicially change the number of parties.

V. Appellant's counsel cites no supporting cases as to the contentions referred to in Divisions I, II and III. Counsel cites only three cases in support of the contention referred to in Division IV.

In Bell v. Mahin, 69 Iowa 408, 29 N.W. 331, there had been an alteration by erasing the name of the original payee and inserting another name. The question decided in the case, however, was that the payer knew about and ratified the change.

Another case cited by appellant is Schram v. Johnson, 208 Iowa 222, 226, 225 N.W. 369, 371. Appellant quotes from this case. The alteration made was trivial. The court held that even though trivial "if the legal import and effect of the instrument are changed" it constitutes a material alteration. In the instant case we hold there was *no change* in the legal effect of the instruments involved.

The third case cited is Fairley v. Falcon, 204 Iowa 290, 214 N.W. 538. The case involves a promissory note which defendant signed after it was due. He claims certain defenses which were not sustained but the court held that since the original signer had no knowledge of defendant's signature on the notes a material alteration had been made. It is not comparable to the facts in the case at bar.

The judgment and decree of the trial court is affirmed.— Affirmed.

All JUSTICES concur.